UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WILLIE SAMPSON,

        Petitioner,

  v.

NETHANJAH BREITENBACH, *et al.*,

        Respondents.

Case No. 3:20-cv-00615-MMD-CSD

ORDER

## I. SUMMARY

Petitioner Willie Sampson, a Nevada prisoner, filed a counseled third amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 88 ("Third Amended Petition").) Now before the Court is Respondents' motion to dismiss the Third Amended Petition. (ECF No. 90 ("Motion").) Sampson filed an opposition (ECF No. 92) and Respondents replied (ECF No 95). As discussed below, the Court denies the Motion.

## II. BACKGROUND

In March 2003, Sampson was tried in Clark County Nevada for five offenses, including enhancements for Use of a Deadly Weapon, *i.e.*, "a firearm": (1) First-Degree Kidnapping With Use of a Deadly Weapon; (2) two counts of Lewdness With a Child Under the Age of Fourteen Years With Use of a Deadly Weapon; (3) Attempted Sexual Assault With a Minor Under Fourteen Years of Age With Use of a Deadly Weapon; and (4) Sexual Assault with a Minor Under Fourteen Years of Age With Use of a Deadly Weapon. (ECF No. 7-2 at 16-18.) The jury convicted Sampson for the five charges but found he did not commit those crimes with the use of a deadly weapon. (*Id.* at 2-4.)

By prearrangement the State bifurcated for purposes of trial "Count (6)," for Possession of a Firearm by an Ex-Felon. (ECF No. 7-2 at 7-9.) Following the jury verdict, Sampson pleaded guilty to Count (6) under a guilty plea agreement ("GPA") because he

admittedly "had a gun" in his house. (*Id.* at 11.) The parties agreed that, "[i]n the event that the matter is remanded back for a new trial for any reason, whatsoever . . . it's not an admission, it would not be used in any subsequent trials." (*Id.*)

In 2015, the Ninth Circuit Court of Appeals vacated the jury's verdict for the first trial. (ECF Nos. 31-7, 31-8.) In 2017, a second jury convicted Sampson for the same five offenses as in 2003. (ECF No. 37-9.) The convictions were affirmed on direct appeal and in *pro se* state postconviction review proceedings. (ECF Nos. 39-4, 40-10.)

Sampson filed a *pro se* federal petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 7 ("Original Petition").) As relevant here, Sampson attached as exhibits: (1) the jury instructions for the first trial that concern the jury's assessment whether he used a deadly weapon during the commission of the offenses; (2) the jury's verdict from the first trial finding that although he committed the five offenses, he did not use a deadly weapon during the commission of the offenses; (3) his state postconviction petition following the denial of his direct appeal after the second trial, which included an affidavit and attached exhibits; and (4) the Nevada Supreme Court's affirmance of the denial of the state petition. (ECF Nos. 7; 7-1 at 29-31; 7-2 at 2-4, 93-96.) This Court appointed counsel who filed a first amended petition. (ECF No. 16.)

Respondents moved to dismiss the first amended petition (ECF No. 30), and the parties briefed the motion (ECF Nos. 47; 52) but before the Court ruled on that motion, Sampson filed a motion for leave to file a second amended petition. (ECF No. 49.) Respondents filed a non-opposition, reserving the right to assert defenses, and asserting their lack of objection should not be construed as a concession of any kind, or as waiver of any defenses. (ECF No. 53.) This Court granted Sampson's motion for leave to file the second amended petition and denied the motion to dismiss the first amended petition as moot. (ECF No. 54.) The Court stated the briefing for the motion to dismiss the first amended petition indicated an answer to the second amended petition would be efficient and that Respondents could assert their exhaustion/procedural default defenses in that answer because the parties agreed any unexhausted claims are technically exhausted,

subject to the procedural default doctrine, Sampson claimed he could overcome the defaults under *Martinez v. Ryan*, 566 U.S. 1 (2012), and Respondents requested the Court defer *Martinez* analysis until the merits of Sampson's claims were briefed in an answer and a reply. (*Id.* at 2.)

Respondents did not file a motion to dismiss the second amended petition; instead they filed an answer (ECF No. 65), and Sampson filed a reply (ECF No. 70). Before the Court considered the merits of the second amended petition, Sampson filed a motion for leave to file a third amended petition to add Claim 8 (ECF No. 85). Respondents filed a non-opposition asserting they did not concede Sampson's factual statements in the motion, that Claim 8 is timely under 28 U.S.C. § 2254, or that the claim is meritorious and not subject to dismissal. (ECF No. 86.) The Court granted the motion for leave to file the Third Amended Petition (ECF No. 87).

The Third Amended Petition alleges eight claims:

Claim One: Mr. Sampson was deprived [of] effective assistance of counsel in violation of the Sixth Amendment when trial counsel failed to properly object to the State's introduction on Mr. Sampson's testimony from his first trial.

Claim Two: Mr. Sampson was deprived [of] effective assistance of counsel in violation of the Sixth Amendment when trial counsel failed to properly object to the State's introduction of prior testimony of Officers Joes Kisner and Michael Sneed [sic].

Claim Three: Mr. Sampson was deprived [of] effective assistance of counsel when trial counsel failed to object to the expert testimony of John Pacult.

Claim Four: Mr. Sampson was deprived [of] effective assistance of counsel when trial counsel failed to properly object to the admission of Mr. Sampson's prior conviction of prohibited person in possession of a firearm.

Claim Five: Mr. Sampson's Fourteenth Amendment rights were violated when the district court increased his sentence based on P.T.'s subsequent misconduct and criminal history.

Claim Six: Mr. Sampson was deprived [of] effective assistance of counsel when trial counsel failed to respond to the State's sentencing memorandum.

Claim Seven: Trial counsel's errors, considered cumulatively, prejudiced Mr. Sampson.

Claim Eight: Mr. Sampson was deprived [of] effective assistance of counsel in violation of the Sixth Amendment when trial counsel failed to move to

1   preclude the State's introduction of evidence related to acquitted conduct.

2   (ECF No. 88.)

3   **I.      DISCUSSION**

4   Respondents move to dismiss the third amended petition as untimely. (ECF No.

5   90.) They argue Claim 8 does not relate back, that Claims 1-4 and 6-7 are unexhausted,

6   and the petition must be dismissed as a mixed petition. (*Id.*) Sampson counters that Claim

7   8 relates back to the Original Petition, that Claims 1-4 and 6-8 are technically exhausted

8   by procedural default, and he can overcome the defaults under *Martinez*. (ECF No. 92.)

9   Respondents agree that, should the Court find Claim 8 relates back, Claims 1-4 and 6-8

10  are technically exhausted by procedural default, and request the Court defer ruling on

11  whether Sampson can overcome the defaults until review of the merits. (ECF No. 95.)

12  The Court finds that Claim 8 relates back to the timely Original Petition and Claims 1-4

13  and 6-8 are technically exhausted by procedural default. Sampson alleges he can

14  overcome the default under *Martinez*, and the Court will defer ruling on the defaults of

15  Claims 1-4 and 6-8 until review on the merits.

16  **A.      Relation Back**

17  In Claim 8, Sampson alleges he was deprived the effective assistance of trial

18  counsel during the second trial because counsel failed to move to preclude, based on

19  double jeopardy grounds, the State's introduction of evidence that Sampson possessed

20  and used a firearm during the commission of the offenses. (ECF No. 88 at 32-37.)

21  Respondents argue that Claim 8 does not relate back to the Original Petition because it

22  does not share a common core of operative facts with any claims in that petition.[1] (ECF

23  No. 90 at 8.) Sampson concedes Claim 8 is a new claim but argues that it relates back to

24  the Original Petition because, liberally construed, it shares a common core of operative

25  facts with the Original Petition, including exhibits attached to that Original Petition, and

26  does not rely on facts that differ in time and type from those in the Original Petition. (ECF

27

28  [1]Respondents agree that Sampson's original *pro se* petition was timely filed under 28 U.S.C. § 2254. (ECF No. 90 at 7.)

No. 92 at 2-5.) The Court finds Claim 8 is timely because it relates back and does not rely on facts that differ in time and type from those in the Original Petition. (ECF Nos. 7, 7-1, 7-2.)

Whether a claim "relates back" to a previously-filed, timely § 2254 petition, is governed by Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, which provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Mayle v. Felix*, 545 U.S. 644, 650 (2005) (ruling that Rule 15(c) applies in habeas corpus cases involving state prisoners). "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id.* at 664.

Facts in the original and amended petitions need not "be stated in the same level of detail." *Ross v. Williams*, 950 F.3d 1160, 1168 (9th Cir. 2020) (*en banc*). "Relation back may be appropriate if the later pleading 'merely correct[s] technical deficiencies or expand[s] or modif[ies] the facts alleged in the earlier pleading,' 'restate[s] the original claim with greater particularity,' or 'amplif[ies] the details of the transaction alleged in the preceding pleading.'" *Id.* An amended habeas petition "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type" from those alleged in the timely petition. *Id.* "'[F]or all purposes,' including relation back, the Original Petition consists of the petition itself and any 'written instrument[s]' that are exhibits to the petition." *Id.* at 1167.

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). The relation-back doctrine must also be liberally applied. *See Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n.29 (9th Cir. 1982). The Supreme Court has noted that "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the

asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n.3 (1984).

The Ninth Circuit instructs courts to "follow two steps to determine whether an amended petition relates back to an original petition that relied on an appended written instrument to help set forth the facts on which it based its claims". Courts (1) "determine what claims the amended petition alleges and what core facts underlie those claims;" and (2) "for each claim in the amended petition," courts examine "the body of the original petition and its exhibits" to see whether the pleading set out or attempted to set out "a corresponding factual episode" or "whether the claim is instead supported by facts that differ in both time and type" from those set forth in the original petition. *See Ross*, 950 F.3d at 1167 (quoting Fed. R. Civ. P. 15(c)(1)(B); *Mayle*, 545 U.S. at 650)) (internal quotation marks omitted).

Sampson argues Claim 8 relates back to his Original Petition where he alleged that, "[he] presented [his] claims [as] best [he] could because now with the prosecution using the weapon enhancement in the second trial, double jeopardy was an issue," and that he was "subjected to double jeopardy in the second trial" when the State presented evidence of the deadly weapon after Mr. Sampson was acquitted of the deadly weapon enhancements at the first trial. (ECF No. 92 at 3.) Respondents argue that Sampson's statements in the Original Petition are conclusory, and he failed to allege in the Original Petition specific facts showing a double-jeopardy violation. (ECF No. 95 at 3.)

Claim 8 alleges ineffective assistance ("IAC") of trial counsel for the second trial for failing to move to preclude the State from introducing evidence related to acquitted conduct. (ECF No. 88 at 32-37.) The core facts underlying the claim are (1) the jury for the first trial returned a verdict finding Sampson did not use a firearm during the commission of any of the offenses; (2) trial counsel in the second trial failed to assert that, based on the verdict in the first trial, double jeopardy precluded the State from relitigating the ultimate issue whether Sampson used or possessed a firearm during the offenses;

and (3) Sampson was prejudiced because the State relied on evidence that Sampson used and possessed a firearm during the offenses to convict him at the retrial. (*Id.*)

Ground 3 of Sampson's Original Petition alleged trial counsel was ineffective "in failing to produce . . . the 1st jury trial verdict of the 1st trial." (ECF No. 7 at 8.) The core facts that Sampson alleged for this claim included: (1) "[t]he jury was presented in there [sic] deliberation of the case, the second amended information, whether these five counts were done with or without the use of a deadly weapon"; (2) the jury for the first trial "considered it, acquit[t]ing petitioner of the deadly weapon enhancements"; (3) trial counsel "would not bring up" the jury's verdict from the first trial; (4) "double jeopardy was an issue" "with the prosecution using [sic] the weapon enhancement in the second trial"; (5) "the suppressed evidence supported the inference that the jury in the first trial acquit[t]ed petitioner of all counts one through five, without the use of a deadly weapon"; (6) that "fraud and misrepresentations of the 1st trial prevented counsel in the second trial from fully and fairly presenting it's [sic] it,s [sic] case during the second trial"; and (7) "there is a reasonable probability petitioner'[s] case was negatively affected by suppression of [the jury' verdict]." (*Id.* at 8-10.) Exhibit 3 to the Original Petition includes the jury instructions on use of a deadly weapon in the commission of an offense and Exhibit 4 is the jury's verdict from the first trial. (ECF Nos. 7-1 at 28-31; 7-2 at 1-4.)

After liberally construing the Original Petition, the Court finds each petition alleges trial counsel was ineffective in failing to raise the issue of the prior jury verdict for the firearm enhancement, and that Sampson was prejudiced because counsel's failure to do so permitted the State to violate double jeopardy by obtaining convictions using evidence in the second trial that Sampson used a firearm during the commission of the offenses. Accordingly, the Court finds Claim 8 relates back to the Original Petition because it arises out of the same "conduct, transaction, or occurrence," and shares a "common core of operative facts uniting the original and newly asserted claims." *Mayle*, 545 U.S. at 659.

Respondents claim that the statements concerning Double Jeopardy set forth in the original petition are conclusory. (ECF No. 95 at 3.) The Court finds the allegations in

1   the Original Petition, in the context of the allegations as a whole, sufficiently placed

2   Respondents on notice that Sampson claimed trial counsel was ineffective in failing to

3   raise the issue of the prior acquittal for the use of a firearm during the commission of the

4   offenses, counsel's actions failed to prevent the State from using evidence of the use of

5   a firearm during the second trial, and that, he alleged that, as a result, the State used

6   such evidence in violation of double jeopardy.

7           Sampson additionally contends Claim 8 relates back to his state petition, which is

8   an exhibit to the Original Petition. (ECF No. 92 at 4.) Respondents contend that Claim 8

9   does not share a common core of operative facts with the state petition because Sampson

10  erroneously alleged in his state petition that he was acquitted of Count 6, Possession of

11  a Firearm by an Ex-Felon; rather than acquitted of using a firearm during the commission

12  of the offenses. (ECF No. 95 at 3.) They argue that because the jury for the first trial did

13  not acquit him of Possessing a Firearm as an Ex-Felon, "there is no common core of

14  operative facts." (*Id.* at 4.) Assuming arguendo that the Original Petition does not suffice

15  for relation back, the Court finds Claim 8 relates back to the state petition.

16          It is true that, at many points in the state petition, Sampson confused his acquittal

17  for the deadly weapon enhancement for using a firearm during the commission of the

18  offenses with his guilty plea to Possession of a Firearm by an Ex-felon.[2] He alleged in his

19  state petition that counsel for the second trial was ineffective in failing to "do a complete

20  pretrial investigation into his clients [sic] assertion that . . . the first jury acquitted [him] of

21  Count (6)"; and by failing to "produce" "the first juries [sic] verdict." (ECF No. 7-2 at 33.)

22  He alleged such "evidence could show . . . the first juries [sic] acquit[t]al of Count (6), that

23  would have prevented the state from using Count (6) in the second jury trial. See affidavit

24  an[d] exhibits for support." (*Id.*) He further alleged the trial court erred by allowing the

25  _____

26          [2]The Nevada Supreme Court's decision denying relief for the allegations in the
    state petition (attached to the Original Petition) noted Sampson "confused the offense of
    a prohibited person owning or possession a firearm with a deadly weapon enhancement."
27  (ECF No. 7-2 at 94 n.2.) Although that court noted Sampson's related "double jeopardy
    claim," it stated it "should have been raised on direct appeal after the second trial," and
28  he failed to demonstrate good cause for failure to do so. (*Id.* at 95 n.4.)

State to "impeach" him "with this allege[d] conviction of ex-fellon [sic] in possession of a firearm, dispite [sic] the jury in the first trial acquit[t]ed" him of that charge. (*Id.*) He also alleged the Supreme Court "squarely held that the double jeopardy clause preclud[e]s the government from relitigating any issue that was necessary [sic] decided by a jury's acquit[t]al in a prior trial," and relied on *Ashe v. Swensen*, 397 U.S. 436 (1970). (*Id.* at 34.) And he alleged "the issue preclusion component of the double jeopardy clause barred a second trial of that issue." (*Id.* (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)).)

Claim 8, however, does not rely on an acquittal for Count 6; Claim 8 relies on the jury's acquittal for the firearm enhancement. *See Ross*, 950 F.3d at 1167 ("An amended petition relates back if it asserts one or more claims that arise out of 'the conduct, transaction, or occurrence' that the original petition 'set out' or 'attempted to . . . set out'— in other words, if the two petitions *rely on* a common core of operative facts.") (emphasis added). Moreover, the state petition demonstrates Sampson, at the very least, attempted to set out an IAC claim that counsel's failure to raise the issue of the acquittal for the firearm enhancement resulted in prejudice, e.g., a double-jeopardy violation.

The state petition alleged trial counsel for the second trial failed to "produce" "the first juries [sic] verdict" and that "jeopardy attached when the . . . state presented to the jury in there [sic] deliberations of the case that all (5) five counts were done 'with the use of a deadly weapon.' See Exhibit (B)" (ECF No. 7-2 at 33-34.) "Exhibit B" was the jury's verdict in the first trial and that exhibit clarifies that Sampson was acquitted of the firearm enhancement; not Possession of a Firearm by an Ex-Felon. (ECF No. 7-2 at 1-4, 43.) Thus, Sampson's allegations in the state petition, while inaccurate in many parts, demonstrate his attempt to allege a claim related to his acquittals for using a firearm during the offenses. *See* Rule 15(c)(1)(B) (allowing relation back to an occurrence that was only "attempted to be set out" in the original pleading).

The Court concludes that Claim 8 is united with the allegations in the state petition in that, in each, Sampson claims (1) trial counsel was ineffective in failing to produce the verdict of the first jury; (2) the verdict of the first jury acquitted Sampson of using a firearm

during all five of the charged offenses; and (3) he was prejudiced because counsel's ineffective assistance resulted in a violation of double jeopardy of the issue-preclusion variety under *Ashe*. Accordingly, the Court finds Claim 8 relates back to the state petition because the claim arises out of the same "conduct, transaction, or occurrence" and shares a "common core of operative facts uniting the original and newly asserted claims," and because Claim 8 does not rely on facts that differ in time and type to those in the state petition. Because Claim 8 is not time-barred, the Motion to dismiss Claim 8 as untimely is denied.

### B.  Technical Exhaustion and Procedural Default

The parties agree that Claims 1-4 and 6-8 of the Third Amended Petition are unexhausted. (ECF No. 90 at 2, 9; 92 at 5-6.) Respondents contend this Court should apply applicable state procedural bars and dismiss the petition as a mixed petition under *Rose v. Lundy*, 455 U.S. 509, 510 (1982). (ECF No. 90 at 2, 9-10.) Sampson contends the unexhausted claims are technically exhausted by procedural default and he can overcome the default under *Martinez.* (ECF Nos. 92 at 5 n.2, ECF No. 47 at 5-24.)

A state prisoner first must exhaust state court remedies on a habeas claim before presenting that claim to the federal courts. *See* 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures that state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *See Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

"A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state court level of review available. *See O'Sullivan*, 526 U.S. at 844-45; *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (*en banc*). A properly exhausted claim "'must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle

the petitioner to relief.'" *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)). *See also Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (finding that a fair presentation requires both the operative facts and federal legal theory upon which a claim is based).

A federal court need not dismiss a claim on exhaustion grounds if it is clear that the state court would find the claim procedurally barred. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). *See also Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (*en banc*) ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court."). A claim may be considered procedurally defaulted if "it is clear that the state court would hold the claim procedurally barred." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002). Where a petitioner has "procedurally defaulted" a claim, federal review is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.

"Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing *Coleman*, 501 U.S. at 754-55). However, in *Martinez*, the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. *See Martinez*, 566 U.S. at 16-17. "Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused if state law requires that all claims be brought in the initial collateral review proceeding . . . and if in that proceeding there was no counsel or counsel was ineffective." *Ramirez*, 937 F.3d at 1241 (citing *Martinez*, 566 U.S. at 17).

It is clear that Sampson would face multiple procedural bars if he were to return to state court with his IAC Claims 1-4 and 6-8. *See, e.g.*, NRS §§ 34.726, 34.810. Sampson advances only *Martinez* as a basis for excusing the anticipatory default of his IAC claims. (ECF No. 92 at 5.) The Court reads Sampson's opposition as a concession that the only basis for cause as to any of the unexhausted IAC counsel claims is *Martinez* and will

consider Claims 1-4 and 6-8 technically exhausted on that basis.

The Court defers ruling on whether Claims 1-4 and 6-8 are procedurally defaulted given the fact-intensive nature of the claims and Sampson's cause and prejudice arguments. The Court finds that these questions are inextricably intertwined with the merits of the claims themselves. Accordingly, the Court will defer a determination on whether Sampson can demonstrate cause and prejudice until the time of merits determination. Respondents may renew the procedural default argument as to Claims 1-4 and 6-7 in their answer.

II.      **CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Respondents' motion to dismiss (ECF No. 90) is denied.

It is further ordered that the Court defers consideration of whether Petitioner can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default of Claims 1-4 and 6-8 until the time of merits review. Respondents may reassert the procedural default arguments with respect to those claims in their answer.

It is further ordered that within 60 days of entry of this order, Respondents must file an answer addressing all claims in the Third First Amended Petition for Writ of Habeas Corpus and also addressing whether any of Claims 1-4 and 6-8 are barred by procedural default under federal law.

It is further ordered that the Petitioner will have 60 days from service of the answer within which to file a reply.

///

///

///

It is further ordered that, in all other respects, the schedule for further proceedings set forth in the order entered December 4, 2020 (ECF No. 6) will remain in effect.

DATED THIS 30th Day of September 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE